UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| NAKISHA JACKSON | CIVIL ACTION NO. 20-cv-1634 |
| VERSUS | CHIEF JUDGE HICKS |
| 1ST JUDICIAL DISTRICT COURT, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

NaKisha Jackson ("Plaintiff"), who is self-represented, has complained in this and three other civil actions about state-court protective orders that were issued against her, as well as related proceedings. One person who obtained a protective order is Kristy Wilson, who Plaintiff has described as the wife of a man with whom Plaintiff had been friends for 20 years. Plaintiff alleged in a prior suit that she contacted Ms. Wilson by social media to complain of what Plaintiff alleged was a fake charity run by Ms. Wilson. Ms. Wilson asked the state court for a protective order that would direct Plaintiff not to contact her.

A protective order issued, and that set off a series of state and federal filings by Plaintiff against judges, clerks, law enforcement officers, Ms. Wilson, and others with a connection to the proceedings. In this case, which repeats many of the grievances from the previously dismissed cases, Plaintiff asks for $6,000,000 in damages. Chief Judge Hicks recently granted a motion to dismiss filed by Deputy Clerk Rachel Gallion and dismissed all claims against Gallion and other unknown clerks for failure to state a claim on which relief may be granted. Doc. 14. For the reasons that follow, it is recommended that all

claims against the remaining defendants—Judge Roy Brun, the First Judicial District Court, the Caddo Parish Jail, Angelique Frell, Agent Charles Ladado, and Detective Karum—be dismissed sua sponte and that sanctions be imposed.

**Litigation History**

Plaintiff's first federal suit was filed against the State of Louisiana, Judge Roy Brun, and Clerk of Court Mike Spence to complain of actions taken in connection with the protective order proceedings. This court dismissed Plaintiff's complaint with respect to the state for lack of jurisdiction; the claims against the judge and clerk were dismissed for failure to state a claim on which relief may be granted. NaKisha Jackson v. Roy Brun, et al, 19-cv-1006 (W.D. La.). Judgement was entered in September 2019, Plaintiff's appeal was dismissed for want of prosecution, and her petition for writ of certiorari to the Supreme Court was denied. She then filed two motions to reconsider in the district court. Judge Foote denied both motions and entered an order that, because of Plaintiff's repeated filing of meritless motions, the clerk of court is not to accept any new filings in that matter without prior judicial approval. Plaintiff was also warned of potential sanctions and banned from engaging in email communications with the court except for sending courtesy copies of pleadings.

Plaintiff next commenced a civil action against Ms. Wilson and three other individuals who she alleged requested or obtained protective orders against her in state court. NaKisha Jackson v. Kristy Colvin Wilson, 20-cv-0238. She asserted claims of malicious prosecution. Plaintiff prayed for less than $75,000 in damages from each defendant, so judgment was entered dismissing the case for lack of subject matter

jurisdiction. Plaintiff filed three motions to reconsider, a motion to amend complaint, and a motion for summary judgment in the several months after judgment was entered. Chief Judge Hicks denied all of the motions.

Plaintiff's post-judgment efforts in 20-cv-0238 included an attempt to amend her complaint to allege a greater amount in controversy and otherwise cure jurisdictional deficiencies in her complaint. Two days after Chief Judge Hicks denied as untimely Plaintiff's request to amend her old complaint, she filed a third civil action, 20-cv-1626 which was essentially the amended complaint that she denied leave to file in 20-cv-0238. That civil action was dismissed for failure to state a claim on which relief can be granted, and the court warned that Plaintiff would be subject to sanctions, including a requirement of judicial pre-approval for filing, if she continued to file frivolous or malicious motions or suits. By that time, Plaintiff had already filed this fourth suit, 20-cv-1634, which she filed just four days after she filed the third suit.

**Sua Sponte Dismissal**

"A district court may dismiss an action on its own motion under Rule 12(b)(6) as long as the procedure employed is fair." Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998). This procedure is fair, because this Report and Recommendation provides Plaintiff with sufficient notice of and opportunity to respond to the possible dismissal of some defendants. Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) (sua sponte invocation of defense in Report and Recommendation satisfied due process). Such a sua sponte dismissal is permissible even if done prior to a defendant being served. Alexander v. Trump, 753 Fed. Appx. 201, 208 (5th Cir. 2018).

**Judge Roy Brun**

Plaintiff has alleged in her prior actions, including 19-cv-1006, that Judge Roy Brun presided over the hearing that resulted in the issuance of a protective order. Plaintiff has sued Judge Brun before, and the claims against him have been dismissed based on absolute judicial immunity. She once again names him as a defendant based on assertions that he lacked subject matter or personal jurisdiction over her, and he engaged in judicial misconduct such as not signing an order to allow an appeal, entry of illegal judgments, denial of equal protection of the laws, refusal to recuse, entry of harsh judgments, and setting of bail in an amount twice what Plaintiff paid in Texas for a protective order violation.

Judges enjoy absolute immunity from liability for damages arising out of performance of their judicial duties. Mireles v. Waco, 112 S.Ct. 286, 288 (1991). The "immunity applies even when the judge is accused of acting maliciously and corruptly." Pierson v. Ray, 87 S.Ct. 1213, 1218 (1967). "It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants." Id. "His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." Id. "Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation." Id.

Whether an act by a judge is a judicial one to which immunity applies relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in her judicial

capacity. Mireles, 112 S.Ct. at 288. The Fifth Circuit has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. Davis v. Tarrant County, 565 F.3rd 214, 222 (5th Cir. 2009). These factors are broadly construed in favor of immunity. Id.

The judicial conduct about which Plaintiff complains was unequivocally undertaken in the ordinary exercise of judicial duties and was squarely within Judge Brun's authority as a judicial officer of the court. Conducting a courtroom hearing on a motion for protective order, issuing a decision on that motion, and presiding over related enforcement matters are at the heart of judicial duties. All four of the relevant factors support immunity. Judge Brun is absolutely immune from the claim asserted by Plaintiff in connection with those proceedings.

**First Judicial District Court**

Plaintiff names as a defendant the First Judicial District Court, but she does not allege any actions by the court other than the orders and decisions of its judges. The judges are entitled to immunity, and the court itself is not an entity that has the capacity to be sued under 42 U.S.C. § 1983. Bell v. 10th Judicial District Court, 2019 WL 2571890, *2 (W.D. La. 2019); Wilson v. Moore, 2015 WL 9958402, *3 (M.D. La. 2015). Accordingly, all claims against the First Judicial District Court should be dismissed.

**Caddo Parish Jail**

Plaintiff alleges that she was wrongfully detained on orders of the First Judicial District Court and exposed to Covid-19 by being required to remain in confined spaces, with strangers, without masks. She does not allege that she became ill, but she asks for $6 million for putting her health and safety at risk following arrest. She names as a defendant Caddo Parish Jail, which she alleges risked her health and safety by assigning a cell without considering her criminal history and placing her in a cell with two others, without masks or social distancing. She also complains of limited phone privileges that did not allow her to contact her attorney.

The facility sometimes referred to as the Caddo Parish Jail is actually the Caddo Correctional Center. It is not an entity capable of being sued. It is merely a building and grounds owned by the sheriff. Stephens v. Prator, 2017 WL 3775953, *4 (W.D. La. 2017). Accordingly, all claims against the Caddo Parish Jail should be dismissed.

**Angelique Frell**

Plaintiff alleges that the state court wrongfully entered orders against her and that she was harassed and arrested by law enforcement. Among the defendants listed is Angelique Frell, who Plaintiff describes as Director of Civil Division, State of Louisiana. Plaintiff's only allegations with respect to Frell are that she had prior knowledge of the activity alleged in the complaint and did not intervene, and Frell allegedly allowed illegal civil judgments "to turn criminal against me" without intervention.

To avoid dismissal for failure to state a claim, a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129

S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)). The factual allegations must "raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. "[P]ro se complaints are held to less stringent standards than those drafted by lawyers," but even in a pro se complaint "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).

Plaintiff has not made sufficient allegations to state a plausible claim against Ms. Frell. Frell's job and connection to the state court proceedings is not made clear. And, at best, Plaintiff alleges that Frell knew about allegedly unlawful orders but did not intervene to help Plaintiff. Plaintiff does not explain why Frell had such a duty under the federal constitution or how Frell could have done anything to overturn a district judge's order. Given the lack of clear factual allegations that describe a constitutional violation committed by Frell, the claims against her should be dismissed.

**Federal Agent Charles Ladado**

Plaintiff briefly alleges in her complaint that she was arrested without probable cause in connection with the protective order proceedings in state court. The complaint does not specifically allege who arrested her, but it does clearly suggest that all matters occurred in the state court system. Inexplicably, Plaintiff lists as a defendant "Federal Agent Charles Ladado." She then lists four allegations without any additional context: (1) police misconduct – illegal questioning, (2) illegal arrest, (3) awareness of no warrant and no long arm prior and during arrest, and (4) misrepresentation of government agency he was responding on behalf of.

A federal agent is not a state actor who may be sued under Section 1983. A plaintiff may attempt to seek a remedy for an alleged constitutional violation through what is known as a Bivens action, but the Fifth Circuit has recently emphasized that a Bivens claim is limited to the circumstances set forth in the three Supreme Court decisions that have recognized such a claim. Those circumstances are: (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment; and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment. Oliva v. Nivar, 973 F.3d 438, 442 (5th Cir. 2020); see also Byrd v. Lamb, __ F.3d __, 2020 WL 871199 (5th Cir. 2021).

Plaintiff has not alleged facts that would fall within one of those categories, so she has not stated a viable Bivens claim. The court does not see in her complaint any other basis for a valid claim against the alleged federal agent. All claims against him should be dismissed.

**Detective Karum**

Plaintiff's complaint generally alleges that she was wrongfully arrested on orders of the First Judicial District Court. She names as a defendant Detective Karum, Shreveport Police Department, with little context as to what Karum allegedly did or did not do. Plaintiff merely offers the following list of grievances:

(1) Police misconduct—excessive contact of inappropriate nature;

(2) Threatening criminal pursuit, intimidation, and harassment;

    (3)    Acting on threat of criminal pursuit with no evidence and no probable cause;

    (4)    Falsified evidence and lied about some names of those pursuing violation;

    (5)    As of December 3, 2020, still consorting with known liars to pursue me.

It appears that the gist of Plaintiff's allegations is that Karum wrongfully arrested her based on the state court order. Plaintiff cannot prevail on a claim of unlawful seizure or false arrest unless she alleges facts that, if true, show that the arresting officer lacked probable cause to seize and/or arrest her. Travis v. City of Grand Prairie, Texas, 654 Fed. Appx. 161 (5th Cir. 2016). Plaintiff has not alleged such facts, and a law enforcement officer with knowledge of an outstanding arrest warrant may effect an arrest. Duckett v. City Cedar Park, 950 F.2d 272, 280 (5th Cir. 1992) (granting qualified immunity to officer and holding that outstanding warrant provides probable cause for arrest).

Plaintiff offers conclusory assertions such as "police misconduct" and "falsified evidence," but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" to survive Rule 12(b)(6) review. Twombly, 127 S.Ct. at 1965 (cleaned up). Similarly, the conclusory allegations that Karum "lied about some names" or consorts with known liars, harassed Plaintiff, and the like lack sufficient factual underpinning to make out a claim that Karum violated Plaintiff's constitutional rights.

**Conclusion**

Plaintiff has the experience of filing four complaints and reviewing various judicial opinions that have pointed out where those complaints were lacking. She should know by

now—her fourth attempt to state a viable claim based on her dissatisfaction with the state court proceedings—that more is required to make out a constitutional claim. Based on the meager facts alleged, the attempted claims against the remaining defendants should be dismissed for failure to state a claim on which relief may be granted.

**Sanctions Recommendation**

Plaintiff has now filed four meritless lawsuits based on the same subject matter, and she has filed multiple meritless motions within those proceedings. She was warned of potential sanctions by Judge Foote and the undersigned. No warning or explanation of the law has deterred Plaintiff from filing more meritless suits and motions.

Each of Plaintiff's complaints and motions require the expenditure of judicial resources that could otherwise be spent on the resolution of the cases of deserving litigants. To prevent such abuses, the court has the authority to structure sanctions as are necessary or warranted to control its docket and maintain the orderly administration of justice. See Goldgar v. Office of Administration, 26 F.3d 32, 36 n.3 (5th Cir. 1994); Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993); Moody v. Miller, 864 F.2d 1178, 1179 n.2 (5th Cir. 1989).

Sanctions are appropriate in this case to avoid more wasted resources required by Plaintiff's numerous, meritless filings, which she will almost certainly continue to file absent strong preventive measures. Plaintiff has established a litigation history that demonstrates that a lesser sanction will not be sufficient to deter her. The circumstances before the court warrant an order that the Clerk of Court not file any civil complaint submitted by Plaintiff unless the complaint has been presented first to a district judge of

this court and the judge has specifically authorized in writing that the complaint may be filed. Any motion to proceed in forma pauperis that accompanies such a complaint should also be directed to a district judge for action. Those measures will protect the resources of the judiciary and the public without unduly burdening Plaintiff's ability to access the courts if she ever has a good faith complaint.

Accordingly,

IT IS RECOMMENDED that all claims against Judge Roy Brun, the First Judicial District Court, Caddo Parish Jail/Caddo Correctional Center, Angelique Frell, Agent Charles Ladado, and Detective Karum be dismissed with prejudice for failure to state a claim on which relief may be granted.

IT IS FURTHER RECOMMENDED that the Clerk of Court be ordered to decline to accept and file any civil complaint submitted pro se by Nakisha Jackson unless the complaint has been presented first to a district judge of this court and the judge has specifically authorized in writing that the complaint may be filed. It is also recommended that any motion to proceed in forma pauperis that accompanies such a complaint be referred to a district judge for action.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of March, 2021.